# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| | : | |
| JOSEPH GUARRASI, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-1879 |
| | : | |
| COUNTY OF BUCKS *et al.*, | : | |
| Defendants | : | |
| | : | |

**Memorandum**

YOHN, J.                                                                          March 28, 2011

Joseph Guarrasi, a *pro se* state prisoner and former attorney, brings this suit against

twenty-two defendants pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1987.[1]

Guarrasi alleges that the defendants violated his rights under Articles I, IV, V, VI, VIII, and XIV

of the Constitution by depriving him of an adequate post-deprivation remedy to retrieve his

personal property seized on March 2, 2004. Currently before the court are four separate motions

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Cuba,

Hower, Zartman, and Borough of Hatboro; a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(5) or 12(b)(6) by County of Montgomery; and a joint motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for a more definite

---

[1] The defendants are County of Bucks, County of Montgomery, City of Hatboro (actually
Borough of Hatboro) and the following individuals in their official and personal capacities:
Donald G. Mather, Norman Kerner, Robert Hegele, Christopher McAteer, Timothy Carroll,
Thomas G. Gambardella, Diane E. Gibbons, Martin McDonough, Robert M. Gorman, Terry J.
Lachman, Michael Mosiniak, Bradley Zartman, Michael Walp, Pete Hower, Thomas Cuba,
Michael Samios, Lisa M. Fryling, and unknown John Doe and Jane Doe, in custody or control of
plaintiff's personal property.

statement, filed by defendants County of Bucks ("Bucks County"), Kerner, McAteer, Carroll, Gibbons, McDonough, Gorman, Lachman, Mosiniak, and Walp (collectively, "the Bucks County defendants"). For the reasons set forth below, I will grant all six motions to dismiss.

## I. Factual and Procedural History[2]

Guarrasi was arrested for various inchoate felonies[3] and his personal property was seized after his homes, office, vehicles, and person were searched on March 2, 2004, pursuant to a warrant and as a search incident to arrest. (Compl. ¶¶ 29, 37.) The seized property includes deeds, titles to four vehicles, stocks, corporate kits to six corporations, client files, over $10,000 from his safe and over $2,000 from his wallet, five registered handguns and a shotgun, household items, and credit and bank records as well as personal records and various documents.[4] (*Id*. ¶ 31.) The money seized was not recorded on the inventory receipt. (*Id*. ¶ 33, Ex. 1 "Warrant Inventory List.") No property was forfeited or placed into evidence "at the termination of his criminal proceedings on May 25, 2005." (*Id*. ¶ 41.)[5]

Guarrasi has continuously sought the return of his property since the seizure occurred on

---

[2] The following factual recitation is based on the allegations of Guarrasi's complaint.

[3] On March 28, 2005, Guarrasi pleaded no contest to a charge of attempted murder and guilty to charges of attempted aggravated assault, attempted kidnaping, attempted burglary, and related counts.

[4] There were also drugs and a laptop seized that belonged to Mr. Falco, a renter of one of Guarrasi's properties. (*Id*. ¶ 36.)

[5] He was found guilty but mentally ill and was sentenced to six and a half to fifteen years of imprisonment.

March 2, 2004.[6] (*Id*. ¶ 42.) Guarrasi, through his attorney Richard Fink, attempted to retrieve his property immediately after the completion of criminal proceedings on May 25, 2005. (*Id*. ¶ 46, Ex. 5 "Letter 9/23/2005 Fink.") In a letter dated November 3, 2005, Fink informed Guarrasi that he had filed the petition for return of seized property. (*Id*. ¶ 46, Ex. 5 "Letter 11/3/2005 Fink.") From 2005 until 2008, Fink worked with the prosecutor's office in an effort to come to an agreement over what could be returned to Guarrasi. (*Id*. ¶¶ 46-57.) Through a series of letters, Fink updated Guarrasi about his conversations with Assistant District Attorney Gambardella, in which Gambardella assured Fink that all property without evidentiary value would be returned. (*Id*.) In several letters, however, Fink explained to Guarrasi that Gambardella would not "return any evidence which might conceivably relate to the evidence which the prosecution might use in a new trial."(*Id*. ¶ 49.)

In July 2006, Fink and Gambardella agreed to come to a resolution regarding the return of property and present it in the form of a stipulation to Judge Biehn of the Court of Common Pleas of Bucks County. (*Id*. ¶¶ 51-52.) But "defendants continue[d] to stall." (*Id*. ¶ 53.) Nevertheless, Fink continued to work with the prosecutor's office. Fink explained to Guarrasi, however, that notwithstanding Gambardella's promise to review Guarrasi's requests for the return of his property, some items were "contested by the District Attorney's office since your case may be on post-sentence motions and/or appeal, and should be approached at the conclusion of those motions." (*Id*. Ex. 9 "Letter 5/8/2006 Fink.") Also, Fink wrote that "on at least one occasion [Gambardella] indicated that an appeal was pending. This would prevent return of seized

---

[6] Guarrasi has never sought the return of Falco's property. (*Id*. ¶ 48.)

property." (*Id*. ¶ 55, Ex. 14 "Letter 1/11/2007 Fink.") Despite continued assurances that all non-contraband, non-evidentiary property would be returned, no resolution was reached and no property was returned. (*Id*. ¶¶ 55-57.)

Then, Guarrasi received a letter from Gambardella on May 31, 2007, stating that the detectives were too busy to go through the inventory at that time to determine whether Guarrasi's property should be returned, and that the Commonwealth opposes the return of many of the items listed in Guarrasi's petition for the following reasons:

(1) The items have evidentiary value and appeals have not been exhausted.
(2) The items are contraband.
(3) The items are evidence of other crimes (as there is evidence of alleged child pornography on the computers, we oppose their return).
(4) The items are firearms, which you may not own or possess as a result of your convictions
(5) The item relates to the informants and serves no value to you.

(*Id*. Ex. 16 "Letter 5/31/2007 Gambardella.") Gambardella invited Guarrasi to submit a list of items that Guarrasi wanted returned along with an explanation as to why those items are not disqualified based on the reasons listed above. (*Id*.) Guarrasi does not allege whether he responded to Gambardella's letter.

Guarrasi petitioned the Court of Common Pleas of Bucks County for the return of his property,[7] and a hearing was scheduled for January 23, 2008. (*Id*. ¶¶ 58-59.) The Honorable Albert J. Cepparulo denied Guarrasi's motion, stating, "We are here today on an open PCRA . . .

---

[7] Guarrasi alleges that he "again" petitioned the court, (*Id*. ¶ 48), but it is unclear when he first petitioned the court or how many times he petitioned the court.

therefore the petition for the return of property is denied as untimely." (*Id*. ¶ 59, Ex. 18

"Transcript 1/23/2008.") Guarrasi does not allege that he has appealed this order. Nor does he

allege whether his PCRA petition has been resolved or is on appeal. Guarrasi sought a writ of

mandamus from the Pennsylvania Supreme Court on January 24, 2008, requesting a recusal,

change of venue, and the return of property. (*Id*. ¶ 60.) Guarrasi's new counsel, Ronald Elgart, in

a letter dated February 25, 2008, acknowledged the futility of Guarrasi's continued motions for

the return of property, explaining that the property is "quite clearly not going to be released until

you have exhausted all of your post conviction appeals." (*Id*. ¶ 61, Ex. 20 "Letter 2/5/2008

Elgart.") From January 23, 2008, to October 1, 2009, the Court of Common Pleas of Bucks

County refused to hear his further motions. (*Id*. ¶ 62.) On January 14, 2009, Guarrasi filed an

interlocutory appeal to the Superior Court of Pennsylvania, appealing a December 18, 2008,

order denying his motion for recusal. (*Id*. ¶ 63, Ex. 21 "Time-Stamped Notice of Appeal.") And

in a letter dated February 26, 2009, the Bucks County Court Administrator advised Guarrasi that

the court declined to act on his renewed motion for recusal and change of venue. (*Id*. ¶ 64.) Then,

on May 26, 2009, Guarrasi learned from an expert that he hired that renter Falco, had not been

arrested, charged, or convicted, received an opportunity to challenge the validity of the seizure

and to request the return of his laptop at a hearing scheduled a few months after the seizure. (*Id*. ¶

39.)

 Guarrasi received a letter on July 27, 2009, from the Bucks County Solicitor's Office

stating that $2,000 of the money seized was, with Guarrasi's agreement, forfeited. (*Id*. ¶ 65, Ex.

23 "Letter 7/21/2009 Bucks County Solicitor.")[8] But Guarrasi claims that he never agreed to the forfeiture. (*Id*. ¶ 72.) In response to Guarrasi's request for the chain of custody and the alleged forfeiture agreement, the Bucks County Solicitor explained that the forfeiture was pursuant to a verbal agreement made between Fink and Gambardella before Judge Biehn "that took place in the hallway adjacent to Courtroom 1;" the agreement was that the forfeited funds could be used to purchase electronic surveillance equipment." (*Id*. ¶ 67, Ex. 25 "Letter 1/8/2010.") Gambardella believed that it was reduced to a writing or order, but he could not find a copy, and that the money was in the prosecutor's office's account and had not been spent. (*Id*.) Guarrasi did not receive, however, a chain of custody as requested. (*Id*. ¶ 68.) After hiring a private investigator who could not find any evidence of a forfeiture hearing, Guarrasi filed a right-to-know request. (*Id*. ¶ 69.) On February 2, 2010, Bucks County Open Records Officer Det. Lt. Gorman wrote to Guarrasi that the money was deposited in the bank on July 7, 2005, by order of Judge Biehn directing it be forfeited. (*Id*., Ex. 26 "Letter 2/2/2010 Gorman.") Guarrasi alleges that the letter

---

[8] In the letter, the Assistant County Solicitor writes, "Further, enclosed please find Evidence/Property Receipt for the $2,000.00 in cash which was seized and ultimately forfeited, with your agreement, to the forfeiture fund." (*Id*. Ex. 23 "Letter 7/21/2009 Bucks County Solicitor") Guarrasi did not provide a copy of the receipt for the $2,000 that was mentioned in the letter.

In Exhibit 26, the Bucks County Open Records Officer advised Guarrasi that the money had been forfeited and deposited in the bank on July 7, 2005, by order of Judge Biehn. (*Id*. Ex. 26 Ex. 26 "Letter 2/2/2010 Gorman.") Two letters from Fink in October and November 2006 suggest that Guarrasi suspected then that his money had been forfeited. In response to some questions submitted by Guarrasi on October 5, 2006, Fink replied that "no money had been forfeited in your case." (*Id*. Ex. 12 "Letter 7/21/2009 Fink".) And in replying to a letter from Guarrasi dated November 1, 2006, Fink wrote "I don't know where the 'alleged' money given for the 'alleged' hit is. If you're saying that no money was given, I guess there's nothing seized. If there was money given and therefore was seized, it is contraband." (*Id*. Ex. 13 "Letter 11/7/2006 Fink.")

did not provide a chain of custody or photocopy of the currency forfeited.[9] (*Id.* ¶¶ 69-70.) Guarrasi questioned Fink about his participation in the forfeiture agreement, but Fink denied making such an agreement. (*Id.* ¶ 71.)

Guarrasi filed his fifth return of property motion and on March 1, 2010, he received notice that the court declined to act upon the application. (*Id.* ¶¶ 73-74.) Guarrasi alleges that also on March 1, 2010, he conclusively learned that it is defendants' municipal policy and custom, which is given force of law by the Bucks County court, that no post-deprivation remedy for the return of property exists until all post-conviction appeals are exhausted. (*Id.* ¶¶ 44-45.)

Guarrasi filed his complaint on July 1, 2010. On October 1, 2010, defendant Cuba filed a motion to dismiss. On October 8, 2010, the Bucks County defendants filed a joint motion to dismiss or, in the alternative, a motion for a more definitive statement. Then, on October 14, 2010, defendant Hower filed a motion to dismiss. On January 11, 2011, defendant Zartman also filed a motion to dismiss. Defendant Hatboro's motion to dismiss was filed on January 17, 2011.

---

[9] While it is true that no photocopies were provided, Exhibit 26 includes an Evidence/Property Receipt sent by Det. Lt. Gorman, which includes a description of the chain of custody. In the letter, Det. Lt. Gorman wrote that Guarrasi's request for a copy of the $2,000 in U.S. Currency seized from him (Evidence/Property Receipt, Control # 4666) has been approved and "any chain of custody for the same are enclosed." (*Id.*, Ex. 26 "Letter 2/2/2010 Gorman.") An attachment to the letter states that

> Money was signed into evidence on March 4, 2004. It was held in evidence, until it was deposited into the bank on July 7th, 2005 by Order of Judge Beihn, directing it to be forfeited, and used by the County Detectives to purchase equipment. No photocopies of the money were ever produced.

(Id.) Also attached was Evidence/Property Receipt # 4666, which included the chain of custody of the $2,000 seized from Guarrasi. (*Id.*) The receipt indicates that the money was seized February 27, 2004. The receipt also has a hand-written note that states the search warrant and inventory sheet were attached, but they were not included in the Exhibit.

Lastly, defendant Montgomery County filed a motion to dismiss on January 24, 2011.

## II. Legal Standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (2009).

In evaluating a motion to dismiss, "the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Rather, the complaint must contain "'enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

## III. Discussion

In his five-count complaint, Guarrasi alleges that defendants individually and as part of a

conspiracy violated 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1987 by depriving him of

an adequate post-deprivation remedy as required by the First, Fourth, Fifth, Eighth and

Fourteenth amendments as well as the Privileges and Immunities clause.[10] Guarrasi alleges that

he did not receive a meaningful opportunity to retrieve his property, which was seized pursuant

to a valid search warrant on March 2, 2004, because of the defendants' custom and policy of

refusing post-deprivation remedies to convicted inmates until all criminal appeals are complete.

(Compl. ¶¶ 97, 102, 106, 112, 116.) Guarrasi also claims that defendants violated his rights by

failing to list the cash seized on the inventory receipt, thus failing to maintain and provide an

---

[10] Guarrasi alleges that defendants violated his rights under "the corresponding sections of the Pennsylvania Constitution" as well. Defendants Cuba, Hower, Zartman, and Hatboro cite several cases from this district that have held that the Pennsylvania Constitution does not establish a private cause of action for money damages. *See, e.g.*, *Ryan v. Gen. Mach. Prods.*, 277 F. Supp. 2d 585, 595 (E.D. Pa. 2003) (holding there is no private cause of action for damages for plaintiff's claims under Article I, Section 28 of the Pennsylvania Constitution); *Dooley v. City of Philadelphia*, 153 F. Supp. 2d 628, 663 (E.D. Pa. 2001) (holding that Article I, Section 7 does not establish a cause of action for damages); *Douris v. Schweiker,* 229 F. Supp. 2d 391, 405 (E.D. Pa. 2002) (holding that there is no private cause of action under the Pennsylvania Constitution); *see also Jones v. City of Philadelphia*, 890 A.2d 1188 (Pa. Cmmw. 2006) (holding that there is no private cause of action under Article 1, Section 8).

The Supreme Court of Pennsylvania has not ruled on the issue of whether there is a private cause of action for damages under the state constitution. Although in *Jones*, the Commonwealth Court held that there is no separate cause of action for monetary damages under Article I, Section 8, the court implicitly accepted the predicate notion that a private right of action *could* exist under the Pennsylvania Constitution. 890 A.2d at 1193-94 (undertaking an extensive analysis to determine whether it was necessary for the court to create a remedy under the Pennsylvania Constitution.) Because of the principles espoused in *Jones*, Guarrasi's claims "raise a novel or complex issue of State law," a ground for which the court, in its discretion, may decline to exercise jurisdiction. 28 U.S.C. § 1367(c)(1); *see also Trump Hotels & Casino Resorts v. Mirage Resorts*, 140 F.3d 478, 487 (3d Cir. 1998) ("A court may decline to exercise supplemental jurisdiction over a state law claim where 'the claim raises a novel or complex issue of state law.'"). Accordingly, I will decline to exercise jurisdiction over Guarrasi's claims under the Pennsylvania Constitution and those claims will be dismissed without prejudice.

adequate chain of custody. [11]

Many of the defendants before the court were also defendants in Guarrasi's previous lawsuit before this court, which I dismissed as to most claims. *Guarrasi v. Gibbons*, No. 07-5475, 2008 U.S. Dist. LEXIS 81632 (E.D. Pa. Oct. 15, 2008) [hereinafter *Guarrasi I*]. Nevertheless, Guarrasi's claims are not barred by the doctrine of res judicata because he did not previously litigate to a final judgment on the merits any claims for defendants' failure to return his property. Guarrasi's claims are all time-barred, however, as to the significant transactions by the defendants alleged herein. Moreover, Guarrasi's claims lack merit. Guarrasi fails to allege the basic elements required to state claim under sections 1981, 1982, 1985, 1986, and 1987. The section 1983 claim also lacks merit because Guarrasi availed himself of an adequate state post-deprivation remedy. I will therefore grant the six motions to dismiss. [12]

---

[11] Guarrasi asserts that his rights were also violated when Gambardella directed $2,000 of the cash seized on March 2, 2004 to be forfeited. According to the complaint, the forfeiture occurred because of a purported verbal agreement between Gambardella and Fink, which was never reduced to writing. Guarrasi denies consenting to such an agreement and Fink has denied making an agreement with Gambardella on Guarrasi's behalf. The complaint does not allege that the other defendants participated in the forfeiture. Because this claim is alleged only against Gambardella, who is not a party to any of the motions considered herein, the forfeiture claim will not be considered.

[12] As a preliminary matter, defendants Cuba, Hower, and Borough of Hatboro argue that Guarrasi's claims relate to his arrest and conviction and are therefore barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Court held that a section 1983 claim for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under section 1983 unless the plaintiff proves that his conviction has already been invalidated. *Id*. at 486-87. The *Heck* bar does not apply, however, where "'a *§ 1983* action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.'" *Macnamara v. Hess*, 67 F. App'x 139, 144 (3d Cir. 2003) (non-precedential) (quoting *Heck*, 512 U.S. 487 n.7) (allowing suit for an illegal search and seizure because such Fourth Amendment violations "would not necessarily impugn the validity of a conviction"). Guarrasi's suit is therefore not barred by *Heck* because his claims regarding the lack of post-deprivation remedy, if successful, would not impugn the validity of his conviction.

### A. Guarrasi's Suit is Not Barred by Res Judicata

Borough of Hatboro argues that the doctrine of res judicata bars Guarrasi from raising his claims because he has already had a fair and full opportunity to litigate these claims in his previous lawsuit in this court.[13] In *Guarrasi I*, Guarrasi raised a section 1983 claim against the Bucks County custodian of property for failure to return his property, but that claim was not actually litigated. Res judicata serves as a "bar to relitigation of an *adjudicated claim* between parties and those in privity with them." *Transamerica Occidental Life Ins. Co.*, 292 F.3d 384, 392 (3d Cir. 2002) (emphasis added). To establish that the doctrine of res judicata applies, a party must demonstrate the following: (1) the same parties or their privies are involved in both suits; (2) both suits involve the same cause of action; and (3) there was a final judgment on the merits in the previous suit. *Saudi v. Acomarit Mar. Servs.*, 114 F. App'x 449, 454 (3d Cir. 2004) (non-precedential) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). The "purpose of the doctrine is to relieve the parties of the cost and vexation of multiple suits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications." *Turner v. McCormack Baron Mgmt. Servs., Inc.*, 449 F. 3d 542, 551 (3d Cir. 2006).

The first element is satisfied because this suit involves many of the same defendants that were involved in the previous suit. All defendants before the court, except for McDonough, Walp, Hower, Cuba, and Kerner (in his individual capacity), were named defendants in

---

[13] A court may take judicial notice of a prior judicial opinion as a public record without converting a motion to dismiss to a motion for summary judgment. *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004). A court may take notice "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Id*.

Guarrasi's first lawsuit. To determine whether the second element is met, courts must employ a transactional approach examining "'whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same.'" *Duhaney v. AG of the United States*, 621 F.3d 340, 348 (3d Cir. 2010) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). In *Guarrasi I*, I recognized Guarrasi's section 1983 "claim against John Doe, Bucks County custodian of plaintiff's personal property, that the government has failed to return property seized during the search of the home." 2008 U.S. Dist. LEXIS 81632 at *21. Because Guarrasi's constitutional claims in the present action stem from the government's failure to return his seized property, they are part of the same cause of action as that section 1983 claim. But in *Guarrasi I*, the section 1983 claim was only raised against the unnamed custodian of records; he did not raise the claim against any of the other defendants.[14] Guarrasi's current claims are not part of the same cause of action as the claims that were actually raised against the other defendants in *Guarrasi I*.

The third element is also not met because there was no final judgment on the merits. I issued an order on May 27, 2009, dismissing the unnamed custodian of records as a party to the action because Guarrasi failed to comply with a previous scheduling order to name the John Doe

---

[14] In *Guarrasi I*, Guarrasi alleged that defendants unlawfully took possession of three of his properties, transferred the deed to one of those properties without authorization, and otherwise possessed his personal property at each of the three locations. 2008 U.S. Dist. LEXIS 81632 at *3-*4. He also raised many other claims, such as discrimination, invasion if privacy, municipal liability for fraud on the court and false arrest, search and seizure outside the scope of the search warrant, and harm to his reputation. *Id*. The claims raised against the defendants in *Guarrasi I* did not complain of the same acts or include the facts as Guarrasi's claims raised against defendants in this suit. *See Duhaney*, 621 F.3d at 348.

defendant by April 20, 2009. Because the claim for failure to return seized property was only raised against the custodian, the dismissal of the John Doe defendant as a party to the action effectively prevented Guarrasi from pursuing this claim. The claim was not actually dismissed on the merits.[15] Guarrasi's claims are not barred the doctrine of res judicata.

## B. All Claims Are Barred by Applicable Statute of Limitations

All defendants correctly argue that Guarrasi's claims are time-barred. The court may consider a statute of limitations issue in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense [of the running of the statute of limitations] clearly appears on the face of the pleading." *Oshiver v. Levin*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). Guarrasi's federal civil rights claims under sections 1981, 1982, 1983, and 1985 are subject to the state statute of limitations for personal injury actions. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (applying the state statute of limitations

---

[15] Federal Rule of Civil Procedure 41(b) states, "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule–*except one for lack of jurisdiction*, improper venue, or failure to join a party under Rule 19–operates as an adjudication on the merits." (emphasis added). The Supreme Court explained that the "lack of jurisdiction" exception broadly "encompass[es] those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the (c)ourt's going forward to determine the merits of his substantive claim." *Costello v. United States*, 365 U.S. 265, 285 (1961). Rule 41(b) does not change the common-law principle that "'[i]f the first suit was dismissed for defect of pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit." *Id*. at 286 (quoting *Hughes v. United States*, 4 Wall. 232, 237 (U.S. 1866)); *See also, e.g.*, *Johnson v. Boyd-Richardson*, 650 F.2d 147, 149 (8th Cir. 1981) ("Accordingly, a dismissal for failure to name the correct party is a dismissal for 'lack of jurisdiction' for purposes of *Rule 41(b)*."); *Talley v. SEPTA*, No. 93-3060*, 1993 U.S. Dist. LEXIS 16831, at *7-*9 (E.D. Pa.. Dec. 1, 1993) (concluding that prior dismissal with prejudice for failure to exhaust administrative remedies is not final adjudication on the merits).

for section 1981 claims not arising out of an act of Congress enacted after December 1, 1990); *Burnett v. Grattan*, 468 U.S. 42, 49 (1984) (holding that "[i]t is now settled that federal courts will turn to state law for statutes of limitations in actions brought under these civil rights statutes"). In Pennsylvania, this limitations period is two years. 42 Pa. Cons. Stat. § 5524. Section 1986 claims, however, are subject to a shorter one-year limitations period. *See* 28 U.S.C. § 1986 (establishing that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued").

Although state law determines the limitations period, federal law governs the determination of when the limitations period accrues. *See Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). The limitations period begins to run when the claimant "knew or had reason to know of the injury that constitutes the basis of th[e] action." *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982). Whether the plaintiff actually knew of the injury or knew that it constituted a legal wrong is irrelevant; rather, the inquiry is when, through reasonable diligence, was the actual injury knowable. *Fassnacht v. United States*, No. 95-3624, 1996 U.S. Dist. LEXIS 1163, at *7-*8 (E.D. Pa. Feb. 2, 1996) (citing *Oshiver*, 38 F.3d at 1386)).

Guarrasi filed his complaint on July 1, 2010. For his claims to be timely, Guarrasi must not have known or had reason to know of the injuries that forms the basis of this complaint before July 1, 2008. Guarrasi knew or should have known of defendants' alleged failure to list the cash seized on the inventory receipt on March 2, 2004, when the search and seizure occurred. That claim is therefore time-barred.

It is also clear from the face of Guarrasi's complaint that any claim arising from

14

defendants' failure to return his property thus far is time-barred. Guarrasi alleges that the defendants have had unlawful possession of his property since March 2, 2004, and that he has continuously sought the return of his property since then. (*Id.* ¶ 42.) Guarrasi, through his attorney, filed a petition for the return of his items as early as 2005. (*Id.* Ex. 5 "Letter 9/23/2005 Fink.") Guarrasi received a letter from Fink on May 8, 2006, informing him that some of the items included in the petition were "contested by the District Attorney's office since your case may be on post-sentence motions and/or appeal, and should be approached at the conclusion of those motions." (*Id.* Ex. 9 "Letter 5/8/2006 Fink.") Guarrasi also received a letter from Gambardella on May 31, 2007, stating the Commonwealth opposes the return on many of the items in Guarrasi's petition for several reasons, one of which was that the "items have evidentiary value and appeals have not been exhausted."[16]

Then on January 23, 2008, the Court of Common Pleas of Bucks County denied Guarrasi's petition for the return of property as untimely; the judge concluded that the seized property may be used as evidence in future criminal proceedings if Guarrasi is so entitled as a result of his post-conviction appeals. There was an ongoing PCRA petition at that time, which could result in a new trial. This was again confirmed in a letter dated February 25, 2008, in which Guarrasi's new counsel expressly explained to Guarrasi that his property is "'clearly not going to be released until you have exhausted all of your post conviction appeals.'" (*Id.* ¶ 61, Ex. 20.)

---

[16]Also, Guarrasi raised a section 1983 claim for failure to return his property in *Guarrasi I*, which was initially filed in the Western District of Pennsylvania on November 20, 2007, before being transferred to this court on December 21, 2007. This evidences Guarrasi's actual knowledge of an alleged inadequate post-deprivation remedy for the return of his property by November 20, 2007

Guarrasi has not alleged that his PCRA petition and all appeals have been resolved. From Guarrasi's own allegations there can be no doubt that he knew *and* had reason to know that his post-deprivation remedy to retrieve his personal property would be denied until his PCRA petition and all appeals had been resolved and no new trial was granted. By the time Guarrasi filed this suit on July 1, 2010, the claims were well beyond the applicable limitations periods.

Guarrasi argues that his claims are not time-barred, because defendants' wrongful acts are "ongoing violations of Plaintiff's Constitutional Rights from 3/2/2004 to date." "To establish that a claim falls within the continuing violations theory, the plaintiff must . . . demonstrate that at least one act occurred within the filing period: 'The crucial question is whether any present violation exists.'" *West v. Phila. Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir. Pa. 1995) (internal citations omitted) (recognizing continuous violation theory in Title VII context). Even if defendants have violated Guarrasi's constitutional rights by failing to return his property, their retention of his property does not constitute a continuing violation. Rather, the retention of his property is an ongoing consequence of the alleged violation. *See Macnamara v. Blazer Enterprises, Inc.*, 67 F. App'x 139, 143-44 (3d Cir. 2003) ("[T]he retention of the seized property is only a consequence of the original alleged illegal seizure and does not affect the date on which the claim accrues). Guarrasi does not make any allegations of new or continuing unlawful acts by defendants within the filing period in furtherance of their alleged scheme to retain his property. He cannot resurrect a claim that has been barred by the statute of limitations by merely repeating motions or requests that have been made before and rejected.

### C. Guarrasi Failed to Sufficiently Plead Elements to State Claims under Sections 1981, 1982, 1985, 1986, and 1987

Even if the claims were not time-barred, Guarrasi's claims could not withstand a motion to dismiss, because he has not sufficiently alleged the necessary elements to state a claim under the various civil rights statutes.

To state a claim under sections 1981 and 1982, a plaintiff must allege that the defendant intentionally acted in violation of the plaintiff's rights because of the plaintiff's race, ethnicity, or ancestry. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Guarrasi fails to allege any facts in his complaint asserting invidious discrimination based on his race, ethnicity, or ancestry. Rather, Guarrasi claims that he belongs to a class of incarcerated individuals. This is not sufficient to state a claim under section 1981 or 1982.

Guarrasi has also failed to sufficiently plead the elements of a claim under sections 1985 and 1986. Section 1985(3) permits a plaintiff to bring an action if injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[17] It does not provide "substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979). In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court clarified what a plaintiff must allege to state a claim under section 1985(3): "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

_____

[17] Subsections (1) and (2) of section 1985 are inapplicable. Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties. Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witnesses who have testified, or attempting to influence or injure grand or petit jurors. Guarrasi does not allege any conduct covered by these provisions.

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29(1983) (citing *Griffin*, 403 U.S. at 102-03). A plaintiff must also allege that the defendants have acted with "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993) (internal quotation marks and citation omitted); *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) ("[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious").

Guarrasi has not alleged the requisite facts to establish a conspiracy, nor has he pleaded requisite facts to prove invidious discrimination. A plaintiff alleging conspiracy under section 1985(3) "must set forth facts from which a conspiratorial agreement between the defendants can be inferred." *Brookhart v. Rohr*, 385 F. Appx. 67, 70 (3d Cir. Pa. 2010) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)); *see also Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); *Alfaro v. E.F. Hutton & Co., Inc.*, 606 F. Supp. 1100, 1117-18 (explaining that although plaintiffs "need not . . . describe the conspiracy and its formation in great detail," they must "describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy"). Guarrasi makes no factual allegations demonstrating an agreement among the defendants to deprive him of his property.

18

Rather, he conclusively asserts that defendants acted in concert with the intent of violating his constitutional rights. This is merely a legal conclusion couched as a factual allegation. Guarrasi's conclusive allegations of conspiracy are insufficient to withstand a motion to dismiss.

Because Guarrasi fails to make a plausible section 1985 claim, Guarrasi's claim of nonfeasance under section 1986 also fails. *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) ("Because transgressions of *§ 1986* by definition depend on a preexisting violation of *§ 1985*, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.").

Lastly, Section 1987 requires federal officials to institute actions against individuals who violate 42 U.S.C. § 1990. Guarrasi does not allege any facts or legal theories implicating federal officials or section 1990. More importantly, "[o]n its face, *§ 1987* does not authorize a private right of action." *Carpenter v. Ashby*, 351 F. App'x 684, 685 (3d Cir. 2009) (non-precedential).

### D. Section 1983 Claims Also Lack Merit

"To state a *§ 1983* claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Guarrasi claims that defendants, acting individually and as part of a conspiracy, under the color of state law, violated his Fourteenth Amendment rights to procedural due process, substantive due process, and equal protection under the law. The procedural due process claims fail as to the individual and municipal defendants because Guarrasi availed himself of an adequate post-deprivation remedy provided by

Pennsylvania. Guarrasi has not sufficiently pleaded plausible claims of substantive due process or equal protection violations.

### 1. Procedural Due Process

Guarrasi has not sufficiently alleged a section 1983 procedural due process claim against any of the defendants. First, Guarrasi has not sufficiently alleged that defendants conspired to violate his constitutional rights in violation of section 1983. *See Capogrosso*, 588 F.3d at 185 ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); *Alfaro v. E.F. Hutton & Co., Inc.*, 606 F. Supp. 1100, 1117-18 (explaining that although plaintiffs "need not . . . describe the conspiracy and its formation in great detail," they must "describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy"). Guarrasi makes no factual allegations plausibly stating an agreement among the defendants to deprive him of his property. Rather, he conclusively asserts that defendants acted in concert with the intent of violating his constitutional rights. Guarrasi's conclusive allegations of conspiracy are insufficient to withstand a motion to dismiss.

### a. Individual Defendants Are Entitled To Qualified Immunity

Guarrasi's claims against the individual defendants fail because the defendants are entitled to qualified immunity. Qualified immunity is an immunity from suit, rather than a defense to liability, and must therefore be resolved at the earliest possible stage possible in litigation. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009). Government officials are entitled to qualified immunity from suit under section 1983 if "their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Sharrar v. Felsing,* 128 F.3d .810, 826 (3d Cir. 1997). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The defendant has the burden of pleading and proving qualified immunity. *Harlow*, 457 U.S. at 815.

The Supreme Court has stated that random, unauthorized deprivations of property by state officials, whether intentional or negligent, do not violate due process if there is an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation); *Parratt v. Taylor*, 451 U.S. 527, 537-43 (1981) (negligent deprivation). Courts have consistently held that Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy.[18] *Welsch v. Twp. of Upper Darby*, No. 07-4578, 2008 U.S. Dist. LEXIS 65500, at *20 (E.D. Pa. Aug. 26, 2008); *Taylor v. Naylor*, 2006 U.S. Dist. LEXIS 27319, at *1 (W.D. Pa. Apr. 26, 2006);  *Marsh v. Ladd*, 2004 U.S. Dist. LEXIS 22195, at *22 (E.D. Pa. Oct. 27, 2004); *Potts v. City of Phila.*, 224 F. Supp. 2d 919, 938 (E.D. Pa. 2002). Guarrasi petitioned the Court of

---

[18] Pennsylvania Rule of Criminal Procedure 588 provides that

> (A) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

> (B) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property be forfeited

Common Pleas of Bucks County for the return of his property and therefore availed himself of this post-deprivation remedy. It would not have been clear to reasonable officials that defendants' individual actions, in light of Pennsylvania's adequate post-deprivation remedy, violated a clearly established constitutional right. Guarrasi's claim therefore fails because even assuming that all individual defendants, acting under color of state law, deprived Guarrasi of his property, they are entitled to qualified immunity.

### b. Municipal Defendants Did Not Cause Deprivation of Property

Guarrasi's due process claims also fail against the municipal defendants. A municipality is liable under section 1983 "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "'It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable.'" A municipal policy or custom can be either a formal regulation or a "widespread practice that, although not authorized by written law or express municipal policy, is so 'permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotonik*, 485 U.S. 112, 127 (1988) (citations omitted). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385.

Here, Guarrasi makes no allegations regarding any custom or policy of the Borough of Hatboro or Montgomery County, so no claim of municipal liability is raised against them. Guarrasi does, however, identify a Bucks County "policy and custom, which is given the force of law, that no post deprivation return of property motion will be heard on the merits until after all post conviction appeals are concluded, which can result in years or even decades of post

22

deprivation remedy delays."[19] (Compl. ¶ 45.) Guarrasi was informed by his attorney at the time that the policy is "official from the Bucks County District Attorney's Office (by D.A. Diane E. Gibbons)." (*Id.* ¶ 50.)

But as Bucks County argues, Guarrasi has not alleged a causal link between the Bucks County policy and the alleged unconstitutional deprivation of his property. Determining causation in section 1983 claims requires using tort law causation analysis. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Hector v. Watt*, 235 F.3d 154, 160 (3d Cir. 2001)). A section 1983 defendant is a "proximate cause" of the injury if his conduct was a substantial factor in bringing about harm to another. *Id.* (concluding that an order or judgment by a judicial officer may be a superseding cause that severs the chain of causation if the officer was not misled as to the facts of the situation but misapplied the law).

The process by which an individual may retrieve his property that was seized pursuant to valid search warrant in Pennsylvania is via a motion for the return of property to the court of common pleas for the judicial district in which the property was seized. Guarrasi does not allege that the Bucks County custom or policy interfered with his ability to use this process. Instead, he alleges that he was able to access the state court by petitioning for the return of his property several times and received a hearing before the Honorable Albert J. Cepparulo on January 23, 2008. Although Guarrasi, through his attorney, unsuccessfully attempted to retrieve his property by reaching out directly to the Bucks County prosecutor's office, there is nothing in Guarrasi's

---

[19] Guarrasi alleges that "Defendants have a Municipal custom or policy," (Compl. ¶ 45), but the complaint and attached exhibits state that the policy is an official Bucks County policy. (*See e.g.*, *Id.* ¶ 50 (policy "is official from the Bucks County District Attorney's Office (by D.A. Diane E. Gibbons)").)

complaint to suggest that the Bucks County policy interfered with Guarrasi's ability to file a petition in the Court of Common Pleas of Bucks County. Therefore, Guarrasi has not sufficiently alleged that the Bucks County policy denied him a meaningful post-deprivation remedy.

Guarrasi argues that the Pennsylvania Rules of Criminal Procedure offers only vehicles for pre-trial motions for the return of property. But that is not accurate. The Rule does not so state. *See e.g.*, *Commonwealth v. Janda*, 2011 Pa. Super. LEXIS 32, at *5 (Feb. 10, 2011) ("Following his conviction and sentencing, Janda filed a timely post-sentence motion seeking a reduction in restitution, return of property, and challenging the discretionary aspects of his sentence."); *Commonwealth v. Durham*, 9 A.3d 641, (finding that after being sentenced, appellant "filed a variety of *pro se* motions, one of which was a motion for return of property"). Also, Guarrasi has filed several post-trial motions for the return of his property in the Court of Common Pleas of Bucks County, beginning in November 2005, and was provided a hearing on January 23, 2008.

On January 23, 2008, Judge Cepparulo decided that Guarrasi's petition was untimely because Guarrasi's property had potential evidentiary value for future criminal proceedings, a very reasonable and unassailable position; it is therefore the court's judgment that ultimately deprived Guarrasi of his property.[20] In fact, Guarrasi makes no allegations in his complaint regarding defendants' conduct after the January 23, 2008, hearing. Instead, Guarrasi describes his

---

[20] "[I]t is axiomatic that, in any given case, the responsibility for determining the governing law and procedures lies with the judge." *Egervary*, 366 F.3d at 249 Even if Judge Cepparulo's decision were legally erroneous or unconstitutional, Guarrasi does not allege that the judge was misled as to the facts; thus, it would constitute a superseding cause. *Id*. at 247-48 (explaining that an order or judgment by a judicial officer may be a superseding cause that severs the chain of causation if the officer was not misled as to the facts of the situation but misapplied the law).

repeated but identical motions filed with the court and attempts to appeal other issues unrelated to the decision. This is because the court determined his property rights, not the Bucks County prosecutor's office.[21] Therefore, Guarrasi cannot state a plausible claim that the Bucks County policy caused the deprivation of his property.

## 2. Substantive Due Process

Guarrasi has also alleged that the defendants' "practices, acts, policy, custom and invidious discrimination is irrational, it shocks the conscience, it is substantially unfair, and it is a deliberate deprivation of Plaintiff's property rights." (Compl. ¶ 85.) "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). "[T]o prevail on a substantive due process claim, 'a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience.'" *Chambers v. Sch. Dist. of Phila. Bd. Of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). The Third Circuit has held that "'ownership is a property interest worthy of substantive due process protection.'" *Chainey*, 523 F.3d at 219 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600 (3d Cir. 1995), *overruled on other grounds* by *United Artists Theatre Circuit v. Twp. of*

---

[21] Because Guarrasi's alleged deprivations were caused by the state court's decision, rather than defendants' actions, his claims are probably barred by the Rooker-Feldman doctrine, which divests a federal court of jurisdiction if the relief sought requires overruling or voiding a state court decision. See *Turner v. Crawford*, 449 F.3d 542, 547 (3d Cir. 2006). There is no need to discuss the application of Rooker-Feldman to Guarrasi's claims, however, because the motions to dismiss have been granted on other grounds.

*Warrington*, 316 F.3d 392, 401 (3d Cir. 2003)). But Guarrasi has not alleged any action by defendants that shocks the conscience. He therefore has not plausibly alleged that defendants violated his substantive due-process rights.

### 3. Equal Protection

Guarrasi alleges that defendants denied him equal protection of the law on the basis of his status as a convicted, incarcerated individual. (Compl. ¶¶ 83, 102-04.) To support this claim, Guarrasi alleges that Falco, who was not arrested, charged, or convicted, was provided with notice and a meaningful opportunity to be heard at a post-deprivation hearing within three months of the search and seizure on March 2, 2004. (*Id.* ¶¶ 39, 102-04.) Guarrasi alleges that he has not yet been provided a similar post-deprivation remedy, because defendants intentionally discriminate against individuals who are arrested and convicted. (*Id.* ¶¶ 102-04.)

The Equal Protection Clause provides that states shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). The level of scrutiny applied to determine whether the classifications comply with the equal protection clause differs depending on the type of classification. Protected classifications, such as those based on race, religion, and alienage, and those affecting fundamental rights, are subject to heightened scrutiny. *Id.* Other classifications need only be rationally related to a legitimate government goal. *Id.* (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

Incarcerated individuals do not form a protected class. Different treatment based on this

classification need only be rationally related to a legitimate government goal. Delaying the return of seized property to individuals who are arrested, charged, and tried for criminal offenses is rationally related to a legitimate government goal of preserving evidence for trial and subsequent collateral proceedings by the defendant. Moreover, Falco was never prosecuted and therefore was not subject to a trial so that he was clearly not similarly situated to Guarrasi. Guarrasi has thus not stated a plausible section 1983 claim for violation of the equal protection clause.

### 4. Municipal Liability for Failure to Train Officers in Recording Seized Evidence and Maintaining Chain of Custody

Guarrasi also alleges that "[o]n May 27, 2009, Plaintiff did learn from Plaintiff's expert that the Defendants did fail to train and supervise their subordinates, agents and employees in the proper requirements of due process, chain of custody, and in evidence authenticity maintenance."(Compl. ¶ 89.) A municipality may be liable under section 1983 for inadequate training of police officers "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91. Liability for deficient training attaches only if the deficiency in training is "closely related to the ultimate injury." *Id*. at 391.

Guarrasi has not provided any factual basis for his expert's opinion that the three municipal defendants failed to train their employees. Rather, he alleges only that the money seized on March 2, 2004, was not properly listed on the inventory sheet and that no photocopies of the bills seized were provided to him by defendants. (Compl. ¶¶ 33, 89.) These allegations are insufficient to state a plausible claim of municipal liability for failure to train.

Moreover, any alleged deficiencies in training are not related to the injury. Guarrasi alleges that "proper training would have avoided the use, loss, damage and forfeiture of Plaintiff's property in violation of Plaintiff's Constitutional Rights" (*Id*. ¶ 89.) But apart from $2,000 forfeited because of Gambardella's purported agreement with Fink, which Guarrasi denies consenting to, Guarrasi has not alleged that his property was otherwise used, lost, or forfeited because of an inadequate chain of custody. *Cf. United States v. Mohammad*, 95 F. Supp. 2d 236, (D. N.J. 2000) (awarding defendant estimated monetary damages for lost watch that he alleges was seized upon his arrest although government denies possession of item because no inventory receipt was created). And the money was forfeited by court order.

## IV. Conclusion

Guarrasi alleges that defendants violated his constitutional rights by depriving him of a meaningful post-deprivation remedy to retrieve his seized property. Guarrasi's claims are time-barred. Moreover, Guarrasi's claims lack merit because he did not sufficiently plead the elements required to state a plausible claim under sections 1981, 1982, 1985, and 1986, and there is no private right of action under section 1987. Finally, Guarrasi's section 1983 claim fails against the individual defendants because they are entitled to qualified immunity. And the section 1983 claim against Bucks County fails because although Guarrasi sufficiently alleged a municipal policy, he did avail himself of an adequate post-deprivation remedy provided by the Pennsylvania Rules of Criminal Procedure. The municipal policy at issue, therefore, could not have caused his deprivation. For these reasons, I will grant the defendants' motions to dismiss.

An appropriate order accompanies this memorandum.